IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROMAINE S. SCOTT, III, | } | |
| | } | |
| Plaintiff and | } | |
| counterclaim-defendant, | } | CIVIL ACTION NO. |
| | } | 09-AR-1870-S |
| v. | } | |
| | } | |
| MOREQUITY, INC., | } | |
| | } | |
| Defendant and | } | |
| counterclaimant. | } | |

**MEMORANDUM OPINION**

On October 21, 2009, plaintiff, Romaine S. Scott, III ("Scott"), filed a motion to remand the above-entitled case to the Circuit Court of Jefferson County, Alabama, from which it had been removed by defendant, MorEquity, Inc. ("MorEquity"). Defendant invoked this court's subject-matter jurisdiction under 28 U.S.C. § 1332, the statute that provides federal jurisdiction over cases in which the plaintiff and the defendant have diverse citizenships, and in which the amount in controversy exceeds $75,000. Scott's state court complaint alleges a wrongful foreclosure by MorEquity of a mortgage executed by Scott. Scott claims that the foreclosure constituted several torts under Alabama law and proximately caused him damages in an unspecified amount. In other words, there is no *ad damnum* in the complaint. The notice of removal, despite the absence of an *ad damnum*, argues that it should be obvious that Scott is seeking more than $75,000. Strangely, the contentions of the parties on the amount in controversy are divergent, creating a

controversy over the amount in controversy that must be resolved by this court.

In an opinion entered on October 29, 2009, the court rejected MorEquity's reliance on experience within the Alabama court system as proof that tort claims of the sort made by Scott, if proven, can be expected to result in jury verdicts in excess of $75,000. As pointed out in the opinion of October 29, 2009, MorEquity's said argument flies in the face of *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), and must be rejected as an open sesame to this court under § 1332. On October 29, 2009, the court nevertheless denied Scott's motion to remand because the court found implicit in Scott's complaint that he is attacking the foreclosure proceeding itself, so that if he fails in this quest, a deficiency may result. On October 29, 2009, considering the balance due MorEquity at the time of the foreclosure and the amount paid by MorEquity at foreclosure (facts that form the basis of MorEquity's counterclaim for a deficiency of more than $75,000), the court was satisfied that the amount in controversy exceeded $75,000. The court was wrong.

On November 9, 2009, Scott filed a motion for an alteration to or amendment of the order of October 29, 2009. Scott, in effect, wants the court to reconsider its order. The court conducted oral argument on Scott's motion and ordered further briefing. Having before it arguments and documents that were not in the original

removal package, the court now concludes that the unpaid balance of Scott's obligation to MorEquity is, as a matter of law, **zero**. Zero is, of course, $75,000 less than the jurisdictional amount required by § 1332. Having arrived at this conclusion, which will hereinafter be explained, the court lacks subject-matter jurisdiction, and the case is therefore due to be remanded.

It is admittedly unusual for a court to adjudicate an ultimate liability question, even on undisputed facts, without a motion pursuant to Rule 56, F.R.Civ.P., but this case presents a unique set of circumstances in which the decision necessary for a resolution of the question of subject-matter jurisdiction will also constitute a ruling that is dispositive on a crucial liability issue. This court cannot avoid the trespass on what ordinarily would be the state court's responsibility.

Several facts, both disputed and undisputed, are interesting, but they do not require an exposition by this court. The court will limit itself to setting forth and discussing three crucial undisputed facts that, in combination, eliminate this court's subject-matter jurisdiction by eliminating any amount in controversy whatsoever, except the speculative amount that is precluded by *Lowery* as a basis for a diversity removal. The three crucial facts discussed in chronological order are as follows:

(1) After Scott became delinquent on his obligation to MorEquity secured by a mortgage on his home at 3505 Park Lane,

Birmingham, Jefferson County, Alabama 35213 ("the subject property"), Scott attempted to negotiate an agreement with MorEquity to give it a deed in lieu of foreclosure so as to limit the expense and embarrassment of a foreclosure sale, and to eliminate a possible deficiency.  There is a legitimate argument about whether a final and definitive agreement was reached between the parties along the lines suggested by Scott.  However, based on his understanding, whether correct or not, Scott on March 24, 2008, executed a deed in lieu of foreclosure and recorded it at **LR200804, Page 2653**, in the Office of the Judge of Probate of Jefferson County, Alabama.  The said deed warranted title to MorEquity and, if the deed is valid, had the legal effect of relinquishing in favor of MorEquity, its successors and assigns, Alabama's one-year statutory right to redeem and any other rights in the subject property that Scott would have had upon a proper exercise of MorEquity's contractual right to foreclose.  See Ala. Code § 35-10-51(1).  *Inter alia*, Scott's deed in lieu of foreclosure contained the following pertinent language:

> "Said indebtedness is due and payable, and the Grantor is unable to pay the same but is desirous of saving the expense of a foreclosure of said mortgage under the power of sale contained in the same or by judicial foreclosure."

* * *

> "It is agreed between the parties to this instrument that the same shall operate and have the effect as though said mortgage had been foreclosed under the power contained therein and the property herein described purchased by

>       said MorEquity at and for said Four Hundred Ninety
>       Thousand Five Hundred Fifty and 28/100 Dollars plus any
>       taxes, late charges or other costs now due and owing."

The balance due by Scott at the time of the deed in lieu of foreclosure, together with interest, was, by Scott's calculation, $490,550.28, meaning that if MorEquity is, by virtue of Scott's deed, **deemed** to have foreclosed and to have purchased the property for the full amount due "plus any taxes, late charges or other costs now due and owing", there could have been no deficiency.

(2) Despite the recording of the deed in lieu of foreclosure and Scott's insistence that MorEquity thereafter had no right to exercise its power of sale, MorEquity proceeded with foreclosure, publishing the notices provided in the mortgage instrument, and conducting a foreclosure sale, at which it was the successful bidder.  The amount of its bid, and the cost it incurred in conjunction with the foreclosure, are, as will become apparent, facts that are irrelevant to a reconsideration of subject-matter jurisdiction.  After the foreclosure sale, a foreclosure deed was executed by the auctioneer as attorney-in-fact purporting to convey to MorEquity the subject property.  The foreclosure deed, however, **expressly excepted "the statutory right of redemption on the part of those entitled to redeem as provided by the laws of the State of Alabama"**.  (emphasis supplied).  The said foreclosure deed, executed on July 18, 2008, was recorded in the Office of the Judge of Probate of Jefferson County, Alabama, in **LR266854, Page 3915.**

(3) On October 23, 2008, long before any possible statutory right to redeem would have expired, MorEquity sold and conveyed the subject property to Ryan C. Key ("Key"). Its special warranty deed to Key conspicuously did not contain any exception for a right to redeem. It did, however, contain the following language pregnant with meaning:

**"Source of Title: LR200804, Page 2653"**

By this reference to Scott's deed in lieu of foreclosure as its **"source of title"**, MorEquity was representing to the grantee, Key, and to the whole world, that it had acquired its title to the subject property by Scott's deed in lieu of foreclosure, and therefore that there was no outstanding right to redeem. It was Scott's deed in lieu of foreclosure that made MorEquity's title to the subject property marketable, or, if, in theory, a buyer could have been found who was willing to buy the subject property despite an outstanding right to redeem, the price would have been markedly lower than the amount paid by Key.

Although there is a dispute over the real amount received by MorEquity from Key, and the amount that should have been credited to Scott in the event his deed in lieu of foreclosure is not valid, the argument over the amounts paid and credited are rendered moot by the **estoppel** that occurred by virtue of the benefit received by MorEquity from Scott's deed in lieu of foreclosure and by virtue of the express reference to Scott's deed in MorEquity's deed to Key as

the "**source of title**".

The law of waiver and estoppel, as universally understood, precludes MorEquity from denying or retreating from the formal and crucial recitation contained in its deed to Key.  It was only the said recitation that made MorEquity's title marketable before the one-year statutory right to redeem expired.  If MorEquity had relied only on its purported foreclosure deed as its "source of title", the circumstances and legal effect would be entirely different.  Under such circumstances, there would be no estoppel.

The proposition applicable to the actual circumstances of this case is found in *Corpus Juris Secundum*, as follows:

> "As a general rule, the parties to an instrument are estopped to deny recitals therein which are intended by them as admissions of fact, but this rule does not prevail where the reason for it does not apply".

31 C.J.S. *Estoppel and Waiver* § 31 (1996).

In the case at hand, it is clear that MorEquity's recital in its deed to Key was intended as a "**admission**", and there was certainly a good "**reason**" for the recitation.

Although ordinarily the doctrine of equitable estoppel by deed is available only to the parties to the deed itself, the commentator in *Corpus Juris Secundum* correctly cites *Dominex, Inc. v. Key*, 456 So.2d 1147 (Ala. 1984), for the following proposition apposite to this case:

> "One seeking to invoke the doctrine must have some right or interest in the premises."

31 C.J.S. *Estoppel and Waiver* § 46, footnote 87 (1996). Scott was certainly no stranger to MorEquity's deed to Key. He had an "interest in the premises", because he executed the deed that MorEquity expressly cited as its source of title, and without which it could not have obtained the title insurance that its closing documents with Key, made a part of the removal package, proves it obtained and furnished to Key.

Because this court is responsible for constantly monitoring its own subject-matter jurisdiction, and making sure that it has it before proceeding, and because MorEquity, upon removal under § 1332, has the burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000, and because the court, based on undisputed facts, has concluded that the only arguable amount in controversy is of the speculative variety that was rejected by the Eleventh Circuit in *Lowery*, this court finds that it lacks subject-matter jurisdiction and will, by separate order, remand the case.

DONE this 10th day of December, 2009.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE